1
2
3
4
5

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

6
7

8  ROBERT J. DIXON,                          CASE NO. 1:09-cv-00657-DLB PC

9              Plaintiff,                     ORDER DISMISSING CERTAIN CLAIMS
                                             AND DEFENDANTS
10      v.
                                             (Doc. 9)
11  YATES, et al.,

12              Defendants.

13  _____/

14

15                              **Order**

16  **I.      Background**

17          Plaintiff Robert J. Dixon ("Plaintiff") is a prisoner in the custody of the California

18  Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se and in

19  forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  On April 13, 2009,

20  Plaintiff filed the complaint that initiated this action.  On September 18, 2009, the Court

21  dismissed the complaint with leave to amend within 30 days.  On October 15, 2009, Plaintiff

22  filed his first amended complaint ("FAC").

23          The Court is required to screen complaints brought by prisoners seeking relief against a

24  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

25  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

26  legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

27  that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

28  § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been

                                        1

1 │ paid, the court shall dismiss the case at any time if the court determines that . . . the action or

2 │ appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. §

3 │ 1915(e)(2)(B)(ii).

4 │      A complaint must contain "a short and plain statement of the claim showing that the

5 │ pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

6 │ required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

7 │ conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing

8 │ *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient

9 │ factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Iqbal*, 129 S. Ct.

10 │ at 1949 (quoting *Twombly*, 550 U.S. at 555).  While factual allegations are accepted as true, legal

11 │ conclusions are not.  *Id.* at 1949.

12 │ **II.**   **Plaintiff's First Amended Complaint**

13 │      Plaintiff is currently incarcerated at Pleasant Valley State Prison ("PVSP") in Coalinga,

14 │ California, where the events giving rise to this action occurred.  Plaintiff names as Defendants:

15 │ CMO Dr. F. Igbinosa, medical doctors S. Duenas, J. Diep, S. Pido, and E. Brown, clinical

16 │ psychologist Satterthwaite, RN M. Griffith, RN-LVN  L. Mora, RN S. Buckley, LVN, L.

17 │ Medina, and LVN N. Gonzales.

18 │      Plaintiff alleges the following.  Plaintiff received a prostate biopsy at an outside clinic on

19 │ August 1, 2008.  (FAC 1.) On August 4, 2008, during a D-yard clinic visit with Plaintiff, doctor

20 │ Paja called the outside clinic and learned that the biopsy results indicated Plaintiff had prostate

21 │ cancer.  (FAC 1.)  The treatment for this cancer was not chemo or radiation,  but a radical

22 │ prostatectomy.  (FAC 1.)  Plaintiff received a copy of the biopsy results from urologist doctor

23 │ Sable of the outside clinic, who set a time line of 90 days for the surgery. (FAC 2.)  Plaintiff

24 │ handed a copy of these results to Defendant Doctor John Diep at PVSP.  (FAC 2.)  It was

25 │ understood that surgery was urgent.  (FAC 2.)  Defendant Diep read the results of the biopsy,

26 │ placed a copy into Plaintiff's file, and faxed a copy to Defendant Doctor Pido.  (FAC 2.)  Surgery

27 │ was set for September 10, 2009, with doctors Sable and Hennary, who were to perform the

28 │ surgery and repair a hernia.  (FAC 3.)

2

On August 15, 2008, Plaintiff was called to D-yard clinic, where Defendant Pido informed Plaintiff that he was being transferred out of PVSP because it was a valley fever area and chemo weakened the immune system.  (FAC 3.)  Plaintiff informed Defendant Pido that he was not going to receive chemo, but surgery.  (FAC 3.)  Defendant Pido informed Plaintiff that there was no request for urgent surgery in his file, and that the transfer order had already been sent to Defendant CMO Igbinosa to be signed.  (FAC 3-4.)  Defendant RN M. Griffith informed Defendant Pido that a transfer would prolong the date of surgery past the recommended time line. (FAC 4.)  Defendant Pido stated again that the transfer was done.  (FAC 4.)

Defendant Igbinosa signed the transfer order on August 15, 2008, with full knowledge of risk of prolonging the time before surgery.  (FAC 4.)  Plaintiff filed a 602 inmate appeal on September 10, 2008, to prevent the transfer.  (FAC 4.)  On September 25, 2008, Defendant Duenas read the 602 inmate appeal and cancelled the transfer, rewriting the request for urgent surgery.  (FAC 5.)

On November 16, 2008, Plaintiff was called to D-yard clinic to sign prep order for surgery the next day.  (FAC 5.)  Defendant L. Medina asked Plaintiff if he had read and signed the prep work, which Plaintiff said he had. (FAC 5.)  On November 17, 2008, Plaintiff learned that L. Medina had cancelled the transportation because L. Medina thought Plaintiff had not properly prepped for the surgery.  (FAC 5.)

Plaintiff feared that he risked death, and sought help from Defendant Satterthwaite on November 19, 2008.  (FAC 6.)  Plaintiff was seen by doctor Paja on November 26, 2008, who informed Plaintiff of the new surgery date of December 24, 2008.  (FAC 7.)  Surgery was finally performed, but there was no hernia repair.  (FAC 8.)  Plaintiff was told that because of threat of lawsuit, medical staff at PVSP would not assist Plaintiff with cleaning or changing bandages. (FAC 8.)  Plaintiff did not receive pain medications, and was having constipation and voiding issues.  (FAC 8-9.)  On February 17, 2009, there was a build-up of scar tissue.  (FAC 9.) Defendant Diep insisted that a foley catheter be placed into Plaintiff.  (FAC 9.)  A call was made to doctor Sable.  (FAC 9.)  Clinic staff and Defendant Diep were told not to place a foley catheter into Plaintiff, but were instead to take Plaintiff to a hospital.  (FAC 9.)

3

1    Plaintiff was sent to Fresno hospital for placement of a supra pubic catheter.  On March

2  13, 2009, Plaintiff was sent to urologist to undergo a procedure to remove or open the scar tissue.

3  (FAC 9.)  A second request was sent to the clinic for Defendant Diep to not place a foley

4  catheter.  (FAC 9.)  On March 20, 2009, more scar tissue built up, and Plaintiff was again sent to

5  the D-yard clinic.  (FAC 9.)  Defendant Diep insisted that he place a foley catheter, which

6  Plaintiff refused.  (FAC 9.)  Defendant Diep refused to send Plaintiff out.  (FAC 9.)  Plaintiff

7  requested to see Defendant Duenas, chief surgeon and head of the clinic.  (FAC 9-10.)

8  Defendant Duenas had Plaintiff sent to the emergency room in Fresno.  (FAC 10.)  A new supra

9  pubic catheter was placed.  (FAC 10.)  Plaintiff returned to PVSP, and did not receive any

10  medications.  (FAC 10.)

11    On April 3, 2009, Plaintiff was again sent to the urologist to stretch out the scar tissue and

12  open the tract.  (FAC 10.)  The procedure lasted seven days, before voiding started to slow again.

13  (FAC 10.)  On April 14, 2009, Dr. Paja requested Plaintiff to hold on for a few days as she

14  attempted to send him out to an emergency visit with the urologist.  (FAC 10.)  Plaintiff was seen

15  by ultrasound on April 16, 2009.  (FAC 10.)  Plaintiff was supposed to be sent out to the

16  urologist the next day, but this was cancelled because the D-yard clinic found that Plaintiff had

17  refused the ultrasound, which was signed by defendant N. Gonzales.  (FAC 10-11.)  Plaintiff

18  threw a tantrum, and requested to see the head nurse or doctor on duty.  (FAC 11.)  Defendant

19  Mora called over to the prison treatment center, and returned with a fax order signed by

20  Defendant Diep to place a foley catheter. (FAC 11.)   Plaintiff refused and was told to leave the

21  clinic.  (FAC 11.)  Plaintiff was escorted back to his cell.  (FAC 11.)  Later in the afternoon,

22  Plaintiff sought out Defendant Mora, as he was in severe pain.  (FAC 11.)  Plaintiff stated that he

23  would submit to an attempt to have the foley catheter placed.  (FAC 11.)

24    Defendant S. Buckley tried to place the catheter several times unsuccessfully, causing

25  severe pain and damage to Plaintiff's urethra.  (FAC 11.)  Plaintiff was then sent to the prison

26  treatment center, where he was seen by Defendant Diep.  (FAC 12.)  Plaintiff requested that his

27  medical file be brought, and showed staff the orders that they not place a catheter.  (FAC 12.)

28  Defendant Duenas dismissed Defendant Diep and ordered Plaintiff rushed to an emergency room

1    in Fresno.  (FAC 12.)  As a result of the damage to his urethra, Plaintiff was set up to have laser

2    treatment done.  (FAC 12.)  D-yard clinic gave no care or medication.  (FAC 12.)  After 5 days,

3    Plaintiff removed his own catheter.  (FAC 12.)  Plaintiff requested antibiotics because he had

4    done the removal without gloves or wipes.  (FAC 13.)  Plaintiff had an infection, and was seen

5    by Defendant doctor Brown.  (FAC 13.)  Defendant Brown had Plaintiff sent to the San Joaquin

6    Medical Center.  Plaintiff remained there for seven days until the infection lessened.  (FAC 13.)

7    As a result of damage to Plaintiff's urethra, Plaintiff had to have a permanent supra pubic

8    catheter placed.  (FAC 13.)  Plaintiff seeks monetary damages and injunctive relief.[1]

9    **III.**    **Analysis**

10          **A.**    **Eighth Amendment**

11          The Eighth Amendment prohibits cruel and unusual punishment.  "The Constitution does

12   not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and

13   citation omitted).   A prisoner's claim of inadequate medical care does not rise to the level of an

14   Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal

15   civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate

16   indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting

17   *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  The deliberate

18   indifference standard involves an objective and a subjective prong.  First, the alleged deprivation

19   must be, in objective terms, "sufficiently serious . . . ." *Farmer*, 511 U.S. at 834 (citing *Wilson v.*

20   *Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know[] of and disregard[]

21   an excessive risk to inmate health or safety . . . ." *Id.* at 837.

22          "Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060.  "Under

23   this standard, the prison official must not only 'be aware of the facts from which the inference

24   could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the

25   inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have

26   been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no

27

28       [1] Plaintiff's request for attorney's fees is denied.  Pro se litigants are not entitled to an award of attorney's fees under 42 U.S.C. § 1988.  *Friedman v. Arizona*, 912 F.2d 328, 333 n.2 (9th Cir. 1990).

1   matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175,

2   1188 (9th Cir. 2002)).

3                   **1.**     **Claims Against Defendant Igbinosa**

4         Plaintiff's allegation of liability against Defendant Igbinosa stems from Igbinosa's

5   granting Plaintiff's transfer to another facility, which would have resulted in further delay of

6   Plaintiff's prostatectomy.  However, this transfer was cancelled.  The only consequence of this

7   transfer and subsequent denial was a delay in Plaintiff's surgery.  Plaintiff alleges that Defendant

8   Igbinosa knew of the risks of prolonging surgery and still signed off on the transfer.  This is

9   sufficient under federal pleading standards to state a cognizable Eighth Amendment claim

10   against Defendant Igbinosa.

11                   **2.**     **Claims Against Defendant Pido**

12         Defendant Pido allegedly submitted the transfer order under the mistaken assumption that

13   Plaintiff was to receive chemo.  After being told by Plaintiff that there was no need for a transfer

14   and that a transfer would result in delay of the surgery, Defendant Pido stated that the transfer

15   was already done.  Though the transfer was cancelled later, this resulted in a delay to Plaintiff's

16   prostatectomy surgery.  Plaintiff has not sufficiently alleged a cognizable Eighth Amendment

17   claim against Defendant Pido.  Defendant Pido's actions do not indicate he knew of and

18   disregarded an excessive risk to Plaintiff's health.  Plaintiff alleges at most negligence on the part

19   of Defendant Pido in submitting the transfer order, which does not state a claim for relief under §

20   1983.

21                   **3.**     **Claims Against Defendant L. Medina**

22         Defendant L. Medina allegedly cancelled Plaintiff's transportation for the second time

23   when Medina found that Plaintiff had not properly prepped for the surgery.  This is insufficient to

24   state a cognizable Eighth Amendment claim.  Plaintiff fails to demonstrate that Defendant

25   Medina knew of and disregarded an excessive risk to Plaintiff's health.  Cancelling Plaintiff's

26   transportation was apparently done because Medina thought Plaintiff had not properly prepped.

27   Plaintiff does not demonstrate that Defendant Medina knew of and disregarded any serious harm

28   to Plaintiff's health if surgery was delayed.

1          **4.     Claims Against Defendant M. Griffith**

2          Defendant Griffith from the D-yard clinic called the exam room on November 17, 2008 to

3  find out why Plaintiff had not been transported for surgery.  Plaintiff alleges no act by Defendant

4  Griffith that indicates a violation any of Plaintiff's federal rights.

5          **5.     Claims Against Defendant Satterthwaite**

6          Plaintiff alleges that he sought help from Defendant Satterthwaite, the clinical

7  psychologist.  Plaintiff alleges no act or omission that violates any of Plaintiff's federal rights.

8          **6.     Claims Against Defendant Gonzales**

9          Defendant Gonzales signed an order on April 17, 2009 which stated that Plaintiff had

10  refused ultrasound.  Plaintiff alleges that he did not refuse an ultrasound.  This resulted in

11  Plaintiff not being sent to an outside clinic for the urologist to perform repair and removal of scar

12  tissue.  This is not sufficient to state a cognizable Eighth Amendment claim.  Plaintiff fails to

13  demonstrate that Defendant Gonzales knew of and disregarded an excessive risk to Plaintiff's

14  health.

15          **7.     Claims against Defendant Mora**

16          After Plaintiff was not sent out for repair surgery, Defendant Mora saw Plaintiff on April

17  17, 2009.  Defendant Mora again informed Plaintiff that he had refused the ultrasound.  Plaintiff

18  then requested to see the head nurse or doctor on duty.  Plaintiff speculates that they chose to

19  refuse to help him.  This is not sufficient to state a cognizable Eighth Amendment claim.

20  Plaintiff fails to demonstrate that Defendant Mora knew of and disregarded an excessive risk to

21  Plaintiff's health.

22          **8.     Claims Against Defendant Diep**

23          Defendant Diep allegedly issued an order to place a foley catheter in Plaintiff, despite at

24  least two previous orders from a urologist not to do so.  The attempted placement of the foley

25  catheter resulted in permanent damage to Plaintiff.  This is sufficient to state a cognizable Eighth

26  Amendment claim against Defendant Diep.

27          **9.     Claims Against Defendant S. Buckley**

28          Defendant Buckley was the nurse who attempted to place the foley catheter into Plaintiff,

1   which was unsuccessful and resulted in permanent damage to Plaintiff.  Plaintiff does not state a

2   cognizable Eighth Amendment claim against Defendant Buckley.  It appears that Defendant

3   Buckley was following Defendant Diep's order in attempting to place the foley catheter.  Plaintiff

4   fails to demonstrate that Defendant Buckley knew of and disregarded an excessive risk to

5   Plaintiff's health.

6                   **10.**    **Claims Against Defendant Duenas**

7       Defendant Duenas allegedly cancelled the transfer order that would have resulted in a

8   further delay to Plaintiff's prostatectomy surgery.  Defendant Duenas also ordered Plaintiff sent

9   to the emergency room on two occasions for Plaintiff to receive repair surgery.  Plaintiff alleges

10   no acts by Defendant Duenas that indicate a violation of Plaintiff's federal rights.

11                   **11.**    **Claims Against Defendant Brown**

12       Defendant Brown had Plaintiff admitted to San Joaquin Medical Center after Plaintiff

13   became infected from removing his own catheter.  Plaintiff alleges no acts by Defendant Brown

14   that indicate a violation of Plaintiff's federal rights.

15                   **12.**    **Other Claims**

16       Plaintiff alleges that "medical staff" refused to assist in cleaning Plaintiff or changing his

17   bandages, because Plaintiff had threatened a law suit.  (FAC 8.)  While this possibly states a

18   cognizable claim, Plaintiff fails to link any particular defendant to this act or omission.  To state

19   a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of

20   state law and (2) the defendant deprived him of rights secured by the Constitution or federal law.

21   Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); *Johnson v. Duffy*, 588 F.2d

22   740, 743 (9th Cir. 1978).  Plaintiff fails to link a particular defendant or defendants to a violation.

23       Plaintiff alleges that "D Yard clinic" gave no care or medication.  (FAC 12.)  Again,

24   Plaintiff failed to link a particular defendant or defendants to an act or omission that violated

25   Plaintiff's federal rights before Plaintiff can state a cognizable § 1983 claim.

26   **IV.**   **Conclusion and Order**

27       Plaintiff state a cognizable Eighth Amendment claim against Defendants Igbinosa and

28   Diep for deliberate indifference to a serious medical need.  Plaintiff fails to state a cognizable §

1   1983 claim against any other Defendants.

2      Based on the foregoing, it is HEREBY ORDERED that:

3   1.      This action proceed on Plaintiff's first amended complaint, filed October 15,

4           2009, against Defendants F. Igbinosa and J. Diep for deliberate indifference to a

5           serious medical need in violation of the Eighth Amendment; and

6   2.      Defendants S. Duenas, S. Pido, E. Brown, Satterthwaite, M. Griffith,  L. Mora, S.

7           Buckley, L. Medina, and N. Gonzales are dismissed from this action for failure to

8           state a claim upon which relief may be granted.

9   IT IS SO ORDERED.

10  Dated:   **April 13, 2010**                **/s/ Dennis L. Beck**
                                            UNITED STATES MAGISTRATE JUDGE